

SO ORDERED.

SIGNED this 24 day of December, 2014.

David M. Warren
United States Bankruptcy Judge

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

**IN RE:**

**EDWIN RIGOBERTO HERNANDEZ**                    **CASE NO. 13-04735-8-SWH**

**DEBTOR**                                       **CHAPTER 13**

### ORDER GRANTING RELIEF FROM STAY

This matter comes on to be heard upon the Motion for Relief from Automatic Stay to Proceed with Eviction ("Motion") filed by Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the response filed by Edwin Rigoberto Hernandez ("Debtor"). The court conducted a hearing in Raleigh, North Carolina on September 17, 2014 ("Hearing Date"). Matthew L. Underwood, Esq. appeared on behalf of Freddie Mac, and Edward D. Dilone, Esq. appeared on behalf of the Debtor. At the conclusion of the hearing, the court took the matter under advisement. Based upon the evidence presented, the information in the record and the arguments of counsel, the court makes the following findings of fact[1] and conclusions of law:

_____

[1] The court relies heavily on, and incorporates herein, the recitation of the facts contained in the February 27, 2014 Order Regarding Motion for Relief From Stay, issued by the Honorable Stephani W. Humrickhouse.

A.      BACKGROUND

1.      The Debtor filed a Chapter 13 petition on July 30, 2013, and the court appointed John F. Logan, Esq. as the Chapter 13 trustee to perform the duties as provided in 11 U.S.C. § 1302.

2.      The Debtor executed a promissory note ("Note") dated August 17, 2007 in the original amount of $169,100.00 in favor of ERA Mortgage ("ERA").  The Note was secured by a Deed of Trust ("DOT") dated August 17, 2007 and recorded in Book 12711, Page 2728, Wake County Registry, on August 20, 2007.  Mortgage Electronic Registration System, Inc. ("MERS") is the beneficiary under the DOT, but it is the nominee for ERA.[2]

3.      The DOT is a first priority lien upon real property located at 1501 Woodline Drive, Raleigh, North Carolina, 27603 ("Property").  The Property was formerly owned by the Debtor and used as his residence.  As of the hearing date, the Debtor still resided at the Property

4.      On June 22, 2010, the substitute trustee ("Substitute Trustee") under the DOT initiated a foreclosure action ("Foreclosure Action") on the Property for the benefit of PHH Mortgage Corporation ("PHH").

5.      On September 7, 2010, MERS recorded an Assignment of Deed of Trust, executed September 1, 2010, that assigned the DOT to PHH; however, there is no evidence of the exact date the Note may have been assigned by ERA to PHH.[3]

---

[2] "MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans.  Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS.  MERS is listed as the grantee in the official records maintained at county register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights to the mortgages.  The lenders can then sell these interests to investors without having to record the transaction in the public record.  MERS is compensated for its services through fees charged to participating MERS members." *Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.*, 270 Neb. 529, 530 (Neb. 2005); *see also Suss v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 68777, at *3-4 (D. Md. July 9, 2010).

[3] In North Carolina only the promissory note needs to be assigned.  The deed of trust "follows" the promissory note. *Self-Help Ventures Fund v. Custom Finish, LLC* 199 N.C. App 743, 748-9 (N.C. Ct. App. 2009).

6.      On September 13, 2010, pursuant to N.C. Gen. Stat. § 45-21.16, the Clerk of Court of Wake County entered an Order Allowing Foreclosure Sale ("Foreclosure Order").  The Foreclosure Order allowed the Substitute Trustee to move ahead with the foreclosure sale.  One of the findings made by the Wake County Clerk of Court is that PHH was the holder of the Note.[4]

7.      On November 4, 2010, pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, the Debtor filed a Motion to Set Aside the Foreclosure Order ("Rule 60 Motion").  In the Rule 60 Motion, the Debtor argued that PHH did not have standing to foreclose because PHH was allegedly not the holder of the Note when the foreclosure was initiated on June 22, 2010. The court can find no record of a stay of the foreclosure action while the Rule 60 Motion was pending.

8.      On November 24, 2010 the Substitute Trustee sold the Property at a foreclosure sale, and PHH was the high bidder at the sale.  No party filed an upset bid within the time required, and the Debtor's equity of redemption expired.

9.      On December 9, 2010, the Substitute Trustee executed a Substitute Trustee's Deed conveying the Property to Freddie Mac.  The Substitute Trustee's Deed, recorded on December 13, 2010 in Book 14196, Page 13, Wake County Registry, stated that PHH was the last and highest bidder at the foreclosure sale.  The Substitute Trustee's Deed also recited that PHH assigned its bid to Freddie Mac who was the grantee under the Substitute Trustee's Deed. With no stay imposed by the Wake County Clerk of Court, the completion of the sale and the transfer of the Property became effective, subject to further orders of that court. As of December 9, 2010, Freddie Mac was vested with title to the Property through the Foreclosure Action.

---

[4] N.C. Gen. Stat. § 45-21.16(d).

10.     On the same day the Substitute Trustee's Deed was executed, the Wake County Assistant Clerk of Superior Court conducted a hearing on the Rule 60 Motion. According to the Debtor, the Assistant Clerk announced at the hearing that the Foreclosure Order was being set aside. A written order ("Revocation Order") setting aside the Foreclosure Order was not entered until January 5, 2011.

11.     The Revocation Order held that the assignment of the DOT to PHH was not effective until September 1, 2010 (the date of execution), and that PHH had misrepresented its status as holder of the Note and DOT when it filed the Appointment of Substitute Trustee and initiated the Foreclosure Action through the Substitute Trustee. The Revocation Order found that, pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b)(3), the alleged misrepresentations by PHH constituted good cause to set aside the Foreclosure Order.[5]

12.     On January 10, 2011, PHH filed a notice of appeal of the Revocation Order and requested a *de novo* hearing before the Wake County Superior Court. After conducting a hearing, the Wake County Superior Court entered an order on March 10, 2011 ("Reinstatement Order"), reversing the Revocation Order. The Reinstatement Order found that PHH was the holder of the Note, PHH was entitled to foreclose, and that the Debtor had not satisfied the requirements to set aside an order under Rule 60 of the North Carolina Rules of Civil Procedure. The Reinstatement Order reinstated the Foreclosure Order which authorized the completed and consummated foreclosure sale. On April 11, 2011, the Debtor appealed the Reinstatement Order to the North Carolina Court of Appeals.

13.     On May 16, 2011, prior to any ruling by the North Carolina Court of Appeals, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code, Case

---

[5] The Revocation Order never made any finding about the assignment of the Note. The Revocation Order only addressed the assignment of the DOT.

No. 11-03788-8-JRL ("First Case").[6]  Schedule A erroneously listed the Debtor as owner of the Property in fee simple, and Schedule D erroneously listed "Mortgage Service Center" as the party holding a secured claim on the Property.  The address listed on Schedule D for "Mortgage Service Center" appears to be the address at which both the ERA and PHH mortgage service centers are located.

14.    PHH filed a Motion for Relief from Stay or in the Alternative Adequate Protection ("Stay Motion") in the First Case on August 3, 2011.  The Debtor contested the Stay Motion and alleged that PHH was not the holder in due course of the Note and did not have standing to bring the action.  The hearing generated conflicting testimony of who held the Note, resulting in a denial of the Stay Motion without prejudice at the hearing on August 25, 2011, followed by a written Order entered August 30, 2011.  The First Case was closed on June 18, 2012.

15.    With the automatic stay being no longer in effect, the Substitute Trustee, on June 28, 2013, filed the following three documents with the Wake County Clerk of Superior Court:

a.      Assignment of Bid, pursuant to which PHH, through the Substitute Trustee, assigned its bid of $136,800.00 in the Foreclosure Action to Freddie Mac;

b.      Affidavit of Service and Posting of Notice of Foreclosure Sale, in which the Substitute Trustee affirmed under oath that the Foreclosure Proceeding was initiated in compliance with N.C. Gen. Stat. §§ 45-21.17(1) and (4);[7] and

c.      Final Report and Account of Foreclosure Sale ("Final Report").[8]

---

[6] The First Case was filed under Chapter 13 but was converted to one under Chapter 7 on June 10, 2011.

[7] The Substitute Trustee affirmed that pursuant to N.C. Gen. Stat. §§ 45-21.17(1) and (4), Notice of Sale was posted at the Wake County Courthouse and was served on all interested parties 20 days prior to the sale.

[8] The Final Report indicated that the sale resulted in the sum of $136,800.00, and that Freddie Mac was the ultimate purchaser of the Property.  The Final Report did not include the date that the foreclosure sale was conducted, but the Wake County Clerk of Superior Court did not find that exclusion to be a significant error and approved the Final Report.

16.     The filing of these documents was necessary to finalize and complete the Foreclosure Action under Chapter 45 of the North Carolina General Statutes.

17.     The Debtor filed this case ("Current Case") on July 30, 2013.  Schedule A erroneously lists the Debtor as owning a "fee simple or equitable interest" in the Property. Schedule D erroneously lists ERA as holding a secured claim on the Property in an unknown amount and lists a post office box address for ERA.  The creditor mailing matrix filed by the Debtor does not include any address for ERA but does include the address for "Mortgage Service Center" that was listed in the First Case.  It appears the only interest the Debtor has in the Property is that of a holdover tenant.  Freddie Mac owns the Property.

18.     In the Motion Freddie Mac seeks relief from the automatic stay in order to proceed with the eviction of the Debtor from the Property, as it is the owner of the Property. Freddie Mac alleges that the Debtor's last payment on the Note was received over four years ago.

19.     The Debtor argues in response that he has title to the Property because his bankruptcy petition in the First Case stayed his appeal of the Reinstatement Order, and there is no final state court order authorizing the foreclosure.

20.     On November 20, 2013, Judge Humrickhouse held a hearing on the Motion, and gave the Debtor 10 days to produce documentation evidencing that the Debtor had in fact appealed the Reinstatement Order to the North Carolina Court of Appeals ("NCCOA").  The Debtor timely filed a copy of the April 11, 2011 Notice of Appeal.

21.     On February 27, 2014, Judge Humrickhouse entered an Order ("February 27, 2014 Order") on the Motion, finding that although stay relief would be warranted due to the Debtor's failure to provide adequate protection to the holder of the Note and DOT, Freddie Mac

had failed to prove it is the current holder of the Note and DOT. The February 27, 2014 Order gave Freddie Mac 14 days within which to produce sufficient documentation to prove it has standing to enforce the terms of the Note and DOT. If Freddie Mac produced the proper documentation, the Motion would be allowed without further hearing.

22.    The court scheduled the Motion for a hearing. Although the February 27, 2014 Order required Freddie Mac to provide proof of the Note ownership, the February 27, 2014 Order was amended by the court to allow for a hearing and to allow that the Note ownership information be presented at the hearing.

23.    Counsel for Freddie Mac presented the original Note at the hearing. The Note had two allonges attached. The final allonge was endorsed in blank,[9] thereby making the Note "bearer paper." "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specifically indorsed." N.C. Gen. Stat. § 25-3-205(b). The party in possession of the original Note is thus the owner of the Note. *Id.* In this case Freddie Mac, through its counsel, is the owner of the Note.

24.    At the conclusion of the hearing, the court gave Freddie Mac and the Debtor the opportunity to file briefs in support of their positions, in order to assist the court in reaching the truth of the matter.

B.    JURISDICTION

1.    This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2.    The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

---

[9] An indorsement in blank is usually recited as "Pay to the Order of _____" with no specific payee listed.

C.    DISCUSSION

1.    <u>Modification of the February 27, 2014 Order</u>

a.    The Debtor argues that the February 27, 2014 Order prevents Freddie Mac from prosecuting the current Motion because it did not file the documentation evidencing ownership of the Note within the 14 days required under the February 27, 2014 Order. No. 13-04735-8-SWH, slip op. at 7 (Bankr. E.D.N.C. Feb. 27, 2014).  The court amended the February 27, 2014 Order in open court in order to address the real issue, which is whether Freddie Mac has a right to obtain relief from the automatic stay in order to evict the Debtor.

b.    The February 27, 2014 Order also stated that the court would decide the relief requested in the Motion without a hearing (No. 13-04735-8-SWH, slip op. at 8 (Bankr. E.D.N.C. Feb. 27, 2014)); however, through an inadvertent error, the court scheduled a hearing which gave both parties yet another chance to advance their respective positions.  This opportunity for a hearing prevented prejudice to either party when all of the facts had not been made available to the court.

2.    <u>Prior Conclusions by the Court</u>

a.    In the February 27, 2014 Order, Judge Humrickhouse concluded that sufficient cause exists for the automatic stay to be lifted.  The Debtor has made no payment on the Note in over four years, he has not provided for a cure of the arrearage owed under the Note in his Plan and has not provided adequate protection of Freddie Mac's interest in the Property. No. 13-04735-8-SWH, slip op. at 7 (Bankr. E.D.N.C. Feb. 27, 2014).  Those conclusions have not been countered in any way by the Debtor, and the grounds for relief still stand.

8

b.      The only issue that the court wanted to consider further was whether Freddie Mac was the proper party in interest to bring the Motion.   To make that determination, Freddie Mac had to provide sufficient evidence of ownership of the Note.

3.      Ownership of the Note

a.      As recited in the February 27, 2014 Order, the court was concerned with the ownership of the Note, and whether Freddie Mac was the proper party in interest to bring the Motion.   At the prior hearing, Freddie Mac relied upon the Assignment of Deed of Trust recorded in the Wake County Register of Deeds and the Assignment of Bid filed with the Wake County Clerk of Superior Court.   That evidence was insufficient based upon the Debtor's arguments. No. 13-04735-8-SWH, slip op. at 7 (Bankr. E.D.N.C. Feb. 27, 2014).

b.      At the hearing on September 17, 2014, Mr. Underwood, counsel for Freddie Mac, presented the original Note with a blank endorsement.   While Mr. Underwood was in actual possession of the Note, he was acting as attorney, agent and proxy for Freddie Mac, and it is clear from the court's examination of the Note that it was the original document clearly in the possession of Freddie Mac; therefore, Freddie Mac was the proper party to bring the Motion, and the court's concern from the prior hearing has been resolved by that document presentation.

4.      Title to the Property is Vested in Freddie Mac

a.      Even if Freddie Mac could not prove it is the holder of the Note, Freddie Mac is still vested with title to the Property.   Upon the entry of the Reinstatement Order, the Substitute Trustee proceeded in due course to file the necessary documents under Chapter 45 of the North Carolina General Statutes to conclude the Foreclosure Action.

9

The Substitute Trustee's Deed was tendered and recorded on December 9, 2010, almost three years prior to the approval of the Final Report by the Wake County Clerk of Superior Court. Upon the termination of the First Case, the Substitute Trustee was free to file the administrative documents to close the foreclosure file.

b.      The Debtor took no action to prevent the transfer of the Property at the time of the sale, at the time of the tender and recordation of the Substitute Trustee's Deed or at the time the Final Report was filed. The court can find no record of any stay issued by any court, other than the automatic stay triggered by the filing of the First Case, that would preclude or invalidate the transfer to Freddie Mac.

c.      In hindsight, the better course of action probably would have been to appeal the Foreclosure Order or to have filed a separate civil action for injunctive relief that would potentially stay the actions of the Substitute Trustee. Instead, the Debtor relied on a Rule 60(b) motion that was ultimately unsuccessful.

5.    Pending Appeal to the North Carolina Court of Appeals

a.      The Debtor has not provided sufficient information suggesting that he is advancing his appeal in the NCCOA. The court can find no information that he has prosecuted his appeal other than the filing of the Notice of Appeal. No. 13-04735-8-SWH, slip op. at 3 (Bankr. E.D.N.C. Feb. 27, 2014). By not pursuing the appeal, the Debtor has apparently abandoned that action, and the Reinstatement Order remains intact.

b.      Even if the Debtor were able to pursue prosecution of the appeal to the NCCOA, the issue for that court to determine has probably been rendered moot by the recording of the Substitute Trustee's Deed and the Final Report filed in the Foreclosure Action.

10

6.    <u>Balance of Equities</u>

a.    The balance of the equities between the parties falls in favor of Freddie Mac.  The Debtor has not made a payment on the Note is over four years, yet he has lived in the Property without payment.  He has failed to provide for the curing of the arrearage in his proposed Chapter 13 Plan.  He has failed to maintain insurance or pay *ad valorem* taxes on the Property.  Even if the Debtor were vested with title to the Property and Freddie Mac (or PHH) were the mortgagee, the Debtor has failed to offer any adequate protection to the secured party.

b.    While there have been some questions about Freddie Mac's ownership of the Note, those questions have now been resolved.  There is no doubt that ERA, PHH and Freddie Mac made a sloppy mess over the assignments of the Note, but in the end, the Wake County Superior Court found that PHH was the holder of the Note and had the right to foreclose.  Further, even though the stay relief would be granted on other grounds, Freddie Mac was able to produce the original Note that was in its possession.

c.    The only right that the Debtor has in the Property is as a holdover tenant. The stay should be modified to allow Freddie Mac to evict the Debtor without any further delay; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Motion be, and hereby is allowed, and Freddie Mac may initiate eviction proceedings with respect to the Debtor and the Property.

END OF DOCUMENT